# Third District Court of Appeal

## State of Florida

Opinion filed July 29, 2026.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D25-0458
Lower Tribunal No. 23-20427-CA-01
_____

## The Grandview Palace Condominium Association, Inc.,
Appellant,

vs.

## Tracey Judge,
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, William Thomas, Judge.

Gray | Robinson and Richard Danese, Gary M. Carman, and Kristie Hatcher-Bolin (Lakeland), for appellant.

Perez Mayoral, P.A., and Julie K. Mayoral, Michael P. Mayoral, Luis E. Martinez, Jr., and Erik A. Perez, for appellee.

Before LINDSEY, LOBREE and GOODEN, JJ.

GOODEN, J.

Appellant The Grandview Palace Condominium Association, Inc. challenges the propriety of the trial court's directed verdict in favor of Appellee Tracey Judge, as well as several evidentiary rulings. We affirm on all issues, but write to address the directed verdict.[1]

**I.**

The Grandview Palace is a large, high-rise condominium building with over 500 units located in North Bay Village. Appellee Tracey Judge owns a unit in the building. As an owner, he is a member of The Grandview Palace Condominium Association. Both Judge and the Association are bound by

---

[1] See Hudson v. State, 992 So. 2d 96, 107 (Fla. 2008) ("We review a trial court's decision to admit evidence under an abuse of discretion standard. That discretion, however, is limited by the rules of evidence.") (internal citations omitted); § 90.805, Fla. Stat. ("Hearsay within hearsay is not excluded under s. 90.802, provided each part of the combined statements conforms with an exception to the hearsay rule as provided in s. 90.803 or s. 90.804."); Van Zant v. State, 372 So. 2d 502, 503 (Fla. 1st DCA 1979) ("When a business record contains a hearsay statement, the admissibility of the record depends on whether the hearsay statement in the record would itself be admissible under some exception to the hearsay rule. In other words, if the person who prepared the record could not testify in court concerning the recorded information, the information does not become admissible as evidence merely because it has been recorded in the regular course of business."); Charles W. Ehrhardt & Terry P. Lewis, Florida Evidence § 805.1 (2026 ed.) ("For example, if a business record includes a statement of a bystander to an accident, the bystander's statement is hearsay and is not included within the business record exception because the statement was not made by a person with knowledge who was acting within the regular course of the business activity.").

the declarations. The declarations control the responsibilities of each party and include:

### XVIII. The Association

. . .

Maintenance and repair of the Common Elements, except as otherwise provided here, is the responsibility of the Association.
. . .

### XXII. Obligations and Restrictions of Members and Owners

In addition to the other obligations and duties heretofore set forth in this Declaration, every Unit Owner shall:
. . .

(4)　Unit Owners are responsible for any damage to the Association Property, the Common Elements or Limited Common Elements caused by themselves, their family, guests, invitees, servants, lessees and persons who are on the Property because of such Unit Owner.
. . .

(8)　Maintain in a clean and sanitary manner and repair his Unit and all interior surfaces within or surrounding his Unit (such as the surfaces of the walls, ceilings, floors, etc.) whether or not a part of the Unit or Common Elements which are a part of the Unit, and maintain and repair the fixtures therein and pay for any utilities which are separately metered to his Unit . . . .

The declarations define "common elements" as "the portions of the Condominium Property not included in the Units" and "unit" as "part of the Condominium Property that is subject to exclusive ownership."

The Association filed suit against Judge for breach of the declaration and unjust enrichment. It claimed that Judge failed to repair and maintain

3

his unit after water leaks from his washing machine and water heater caused damage. Judge denied the allegations and asserted that the Association failed to maintain and repair the common elements.

The parties' disagreement centers on the cause of the loss and damages. In its case in chief, the Association only called two witnesses: its corporate representative and Judge.[2] The corporate representative, Christopher Cedeno, was the property manager for seven years. He testified that the Association received two reports of possible water leaks concerning Judge's unit. The first involved water in the hallway outside of his unit. The other involved water leaking into the unit below Judge's. Then, in 2021, Cedeno received an email from Judge in which he reported a possible water intrusion from a window, with peeling and bubbling on the wall of the master bedroom.

The next year, there was another report of water in the hallway. The day after receiving the report, Cedeno "observed that the carpet right outside unit 810 was completely soaking wet." This was in the area adjacent to the water heater. The Association opened the wall in the hallway to investigate

---

[2] At the beginning of trial, the trial court addressed the scope of the Association's corporate representative's testimony. It prohibited the corporate representative from establishing causation through the introduction of inadmissible hearsay.

4

the source.  Cedeno saw water "at the drip pan where the water heater sits."

But Cedeno did not elaborate further.

On cross-examination, Cedeno conceded that the Association never hired a leak detection company to determine the source of the water.  Then, the following occurred:

Q.  Okay.  This is not a photo of a leaking water heater unit, correct?

A.  At that point, I couldn't determine.  All I know, it was wet and it's coming from that wall.

Q.  Okay.  This is not a photo of a leaking washing machine, is it?

A.  Once again, I can't determine from the ---
. . .

Q.  Okay.  So the photos that you've presented today to prove your case are photos of a wet hallway, correct?

A.  Correct.

Q.  Okay.  You do not have photos of a leaking washing machine, correct?

A.  No, I don't.

Q.  You do not have photos of a leaking water heater, correct?

A.  No, I don't.
. . .

Q.  Mr. Cedeno, did you see water shooting into the hallway?

A.  I said no.

5

Cedeno acknowledged that the Association is responsible for maintaining the building and that the building contains common element pipes throughout the walls—not owned by any unit owner.

Judge testified that, since purchasing his unit in 2015, his water heater and washing machine have never leaked. But he has personally observed water on the wall of the unit across the hall, which dampened the carpet in the hallway. He reiterated that the wet hallway had nothing to do with his unit. The Association has never sent a company to detect the location of any leak. And Judge observed the Association open walls in the common areas on numerous floors due to water leaks involving the common element pipes.

After the Association rested, Judge moved for directed verdict. Judge maintained that there is no evidence of a leak from his washing machine or water heater, no testimony on the cause of any leak, and no evidence or reasonable inferences that can be made with regards to damages of the leak. The trial court agreed and granted the motion. A written order and final judgment followed:

> The Court finds that Plaintiff's evidence presented is insufficient to warrant a finding as to the causation of the leaks at issue that caused the alleged damage to the association. Specifically, the Plaintiff failed to enter any evidence that supports the cause of the alleged leak from Defendant's washer or water heater. Florida law generally requires expert testimony on technical matters such as building leaks. The record is replete with testimony supporting the fact that the damage repaired by the

6

association was caused by the common element pipes, not by any action or inaction of the Defendant. Furthermore, even if Plaintiff demonstrated that water originated from Defendant's unit, there is no evidence in the record that any reasonable jury could rely upon establishing that Defendant caused the leak or was contractually responsible for the costs associated with the leak. If the leaks originated in the common elements, then Defendant has no liability regarding those areas. . . .

This appeal followed.[3]

## II.

A motion for directed verdict tests the legal sufficiency of the evidence offered in support of a party's case. Lancheros v. Burke, 375 So. 3d 927, 929 (Fla. 6th DCA 2023). In evaluating the motion, the trial court must view the evidence and any inferences in the light most favorable to the non-moving party. Wald v. Grainger, 64 So. 3d 1201, 1205 (Fla. 2011). But this only includes inferences that "the jury might fairly and reasonably arrive at from the evidence." McAllister v. Miami Daily News, 17 So. 2d 613, 614 (Fla. 1944). See also Greenberg v. Post, 19 So. 2d 714, 716 (Fla. 1944); Levine v. Frank, 311 So. 2d 708, 710 (Fla. 3d DCA 1975). When no such evidence or fair and reasonable inferences upon which the "jury could lawfully find a verdict for the plaintiff" exists, "it is the duty of the trial court to direct a verdict

---

[3] The Association moved for rehearing and a new trial. But it withdrew that motion during the pendency of this appeal.

for the defendant." Swilley v. Econ. Cab Co. of Jacksonville, 56 So. 2d 914, 915 (Fla. 1951).

We review the trial court's directed verdict de novo. In doing so, we view the evidence and inferences in like manner. Owens v. Publix Supermarkets, Inc., 802 So. 2d 315, 329 (Fla. 2001). The trial court's decision will be affirmed "where no proper view of the evidence could sustain a verdict in favor of the nonmoving party." Id. See also Houghton v. Bond, 680 So. 2d 514, 522 (Fla. 1st DCA 1996) ("[T]he directed verdict can be upheld only if there is no evidence or reasonable inference which would support a jury verdict in the appellant's favor."). Keeping these principles at the forefront protects the right to a jury trial. See Talley v. McCain, 174 So. 841, 842 (Fla. 1937).

## III.

To prevail on a breach of contract action, the plaintiff must establish the existence of a contract, a breach of that contract, and damages resulting from the breach. DNA Sports Performance Lab, Inc. v. Club Atlantis Condo. Ass'n, Inc., 219 So. 3d 107, 109 (Fla. 3d DCA 2017). The last element requires "a causal connection between the acts complained of and any resulting damage." Imperial Dental Prods., Ltd., Inc. v. Sabra Dental Prods., Inc., 464 So. 2d 197, 197 (Fla. 3d DCA 1985). "[A] plaintiff may recover only

8

if the damages were a proximate result of the breach." Chipman v. Chonin, 597 So. 2d 363, 364 (Fla. 3d DCA 1992).

While this causal connection can be established with circumstantial evidence, there are limits.

> [I]n a civil case, a fact may be established by circumstantial evidence as effectively and as conclusively as it may be proved by direct positive evidence. The limitation on the rule simply is that if a party to a civil action depends upon the inferences to be drawn from circumstantial evidence as proof of one fact, it cannot construct a further inference upon the initial inference in order to establish a further fact unless it can be found that the original, basic inference was established to the exclusion of all other reasonable inferences.

Nielsen v. City of Sarasota, 117 So. 2d 731, 733 (Fla. 1960). See also Voelker v. Combined Ins. Co. of Am., 73 So. 2d 403, 407 (Fla. 1954) (stating that in cases where inferences are drawn from circumstantial evidence, "only if the prior or basic inference is established to the exclusion of any other reasonable theory should another be drawn from it"); Broward Exec. Builders, Inc. v. Zota, 192 So. 3d 534, 537 (Fla. 4th DCA 2016) ("Where an inference is based upon circumstantial evidence in a civil case, it must be the only reasonable inference that can be formed from that evidence for the plaintiff to build further inferences upon it."). "Thus, if the jury is forced to stack inferences to find that the plaintiff presented a prima facie case of the defendant's [breach of contract], then a directed verdict is warranted."

9

Sanders v. ERP Operating Ltd. P'ship, 157 So. 3d 273, 277 (Fla. 2015). "The rule that an inference may not be stacked on another inference is designed to protect litigants from verdicts based upon conjecture and speculation." Stanley v. Marceaux, 991 So. 2d 938, 940 (Fla. 4th DCA 2008).

The Association maintains that it put forth a prima facie case to overcome a directed verdict. Not so. It failed to carry its burden on the last element. The conclusion that Judge's breach of the declarations caused the damages is not a fair and reasonable inference from the mere presence of water. McAllister, 17 So. 2d at 614; Levine, 311 So. 2d at 710. See also Voelker, 73 So. 2d at 406 ("We cannot overemphasize our use of the adjective 'reasonable' as modifying the noun 'inference'.").

To find that the damages were caused by Judge's breach of the declarations, the jury would have to engage in impermissible inference stacking. The Association only showed that there was water present near the water heater. There was no evidence of the cause of the leak. Thus, to prove its case, it needed to stack these interferences: 1) the water heater was the source of the water; 2) Judge did not maintain his water heater; and 3) Judge's failure to maintain his water heater proximately caused the damages. This is a bridge too far. See Sanders, 157 So. 3d at 277.

The first inference—that the water heater is the source of the leak—cannot be made to the exclusion of all other reasonable inferences. Nielsen, 117 So. 2d at 733; Zota, 192 So. 3d at 537. Rather, based on the evidence presented, it is fair and reasonable to infer that the water was from the common element pipes. Because this first inference was not established to the exclusion of all other reasonable inferences, the trial court correctly directed verdict. See Stanley, 991 So. 2d at 941. Cf. Tallahassee Med. Ctr., Inc. v. Kemp, 324 So. 3d 14, 17 (Fla. 1st DCA 2021) (holding the trial court should have directed verdict because "[t]his is not an instance where the main inference underlying the plaintiff's case . . . can be established to the exclusion of other reasonable inferences."). Thus, the jury could not pyramid upon that inference to reach the next inference.

For that reason, a jury verdict concluding that Judge's alleged breach caused the damages would rest on nothing more than speculation. "Proof that raises mere speculation, suspicion, surmise, or conjecture is not enough to sustain a plaintiff's burden of persuasion." Zota, 192 So. 3d at 539. Because the Association failed to directly prove causation or rule out the common element pipes as the source of the leak, no proper view of the evidence can sustain a verdict in its favor. Owens, 802 So. 2d at 329. Accordingly, the trial court rightfully entered a directed verdict.

11

Affirmed.